[907 NYS2d 557]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v SHANI STYLES, Defendant.

County Court, Chemung County, June 24, 2010

## APPEARANCES OF COUNSEL

*Christopher Barton*, Elmira, for defendant. *Weeden A. Wetmore, District Attorney*, Elmira (*John R. Thweatt* of counsel), for plaintiff.

**OPINION OF THE COURT**

PETER C. BUCKLEY, J.

This matter is before the court on the application of the defendant to suppress materials seized pursuant to a search warrant for violation of the holding in *People v Mothersell* (14 NY3d 358 [2010]). The matter was submitted to the court on the filed papers and no hearing was requested.

The court makes the following findings of fact and conclusions of law.

## Findings of Fact

This court issued a search warrant to the New York State Police on October 28, 2009 directing the search of a 2008 Pontiac G6 four-door sedan bearing New York registration EGB 38631 and "[t]he person of any person(s) present in the above mentioned vehicle during execution of this search warrant who may be in possession of the aforementioned property specified [to be seized]."

The warrant application was sworn to by New York State Police Investigator Michael I. Schreiber. The application noted information supplied by a confidential informant (CI) that the owner of the referenced automobile, Caitlin Schoonover, was going on a quick trip to South Carolina to pick up Vincent Dunham and Corey McCray (also known as Big Boy), who were there to obtain cocaine and needed to return the same to Elmira in time to sell it to individuals receiving their checks at the beginning of the month. Investigator Schreiber attested to the reliability of the confidential informant in previous investigations. The Schoonover vehicle was seen by police frequenting the residence of Vincent "Dino" Dunham at 311 Franklin Street in Elmira and was seen transporting Dunham around the area. Three controlled buys of cocaine were conducted by police at that residence and further traffic consistent with drug sales was observed at the residence. Dunham was observed with cocaine during at least one of the controlled buys. A controlled buy was also made from Corey McCray on October 9, 2009. Dunham was indicted by a Chemung County grand jury for cocaine possession on June 11, 2009, from an incident occurring on February 18, 2009.

The warrant application made clear that Caitlin Schoonover, Vincent Dunham and Corey McCray would be located in the vehicle as it returned from South Carolina. There was no mention

of Shani Styles in the warrant application. It was known at the time of the application that the time schedule for the return from South Carolina had been moved up, but it was not known the exact time when the group would be returning to Chemung County. In this regard, permission was sought to "ping" Ms. Schoonover's cell phone for GPS location and to serve the warrant at any hour of the day or night.

Dino and Big Boy left for South Carolina on October 21, 2009. Caitlin Schoonover was to leave to pick them up on October 30, 2009. However, this schedule was moved up. "The CI stated that the urgency for 'Big Boy' and Dino to return to Elmira by Thursday October 29, 2009 was due to people getting their checks on the first of the month and they would have cocaine to sell those people." The confidential informant had learned this information from Caitlin Schoonover.

Police stopped the vehicle on Route 86 in the Town of Ashland, as it returned to Chemung County. The defendant and the above-noted individuals were found to occupy the vehicle. The females both produced cocaine from their bras for the police, prior to their search.

## Conclusions of Law

The Court of Appeals decided the case of *People v Mothersell* (14 NY3d 358 [2010]) on April 1, 2010. The Court declared a warrant invalid for a residence which directed the search of all persons located therein at the time of the execution of the warrant.

> " 'The facts made known to the Magistrate and the reasonable inferences to which they give rise, must create a substantial probability (*see People v Baker*, 30 NY2d 252, 259) that the authorized invasions of privacy will be justified by discovery of the items sought from all persons present when the warrant is executed. If this probability is not present, then each person subject to search must be identified in the warrant and supporting papers by name or sufficient personal description.' " (*People v Mothersell*, 14 NY3d 358, 363 [2010], quoting *People v Nieves*, 36 NY2d 396, 404-405 [1975].)

The *Nieves* case involved the search of a restaurant which was open to the public and the *Mothersell* case involved a residence apartment.

*Nieves* reviewed the factors which a court should consider in reviewing such a warrant application and *Mothersell* described the factors as follows:

> "Among these were the character of the premises, the nature of the illegal activity believed to be conducted at the location, the number and behavior of the persons present at the time of day or night when the sought warrant was proposed to be executed, and whether persons unconnected with the illicit activity had been observed at the premises." (*Mothersell* at 364.)

"The essential object of the searching examination required of the reviewing magistrate under *Nieves* is to guard against the authorization of a dragnet likely to include the innocent, a danger that would otherwise routinely be courted in issuing all-persons-present warrants." (*Id.*)

"[T]he facts before the issuing Judge at the time of the warrant application, and reasonable inferences from those facts, must establish probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the articles sought." (*Id.*, quoting *Nieves* at 404; *see also Ybarra v Illinois*, 444 US 85 [1979].)

Probable cause to believe that illegal drugs would be found in Caitlin Schoonover's car is provided by the confidential informant. This person establishes that Dino and Big Boy were in South Carolina. Further the CI stated that the two often go to South Carolina and Florida to obtain cocaine to sell in Elmira. Big Boy and Dino left for the south on October 21, 2009 with Caitlin leaving Elmira to pick them up for the return trip on the night of October 30, 2009. That schedule ended up being changed for the reasons stated. "The CI stated that the urgency for 'Big Boy' and Dino to return to Elmira by Thursday October 29, 2009 was due to people getting their checks on the first of the month and they would have cocaine to sell those people." The CI spoke with Schoonover on her cell phone and learned that she was already in South Carolina and the new schedule for them to return.

Investigator Schreiber testified that the CI had provided him with information which was verified as accurate in other investigations.

Police had conducted controlled narcotics purchases from the residence of Vincent Dunham and noted increased traffic to and from that residence consistent with drug sales. Dunham was

identified as in possession of cocaine during one of the controlled buys at his residence. Caitlin Schoonover's vehicle was seen frequently at the location and she was seen driving Dino around town in her vehicle. John Blackman, another member of the South Carolina group, was found by police with drugs on October 14th. Police also conducted a controlled buy of crack cocaine from Corey McCray on October 9, 2009. Vincent Dunham was under indictment for cocaine possession at the time. All of this information, confirmed by police investigation, supports the statements of the CI.

> "Initially, '[t]o establish probable cause, a search warrant application must provide sufficient information "to support a reasonable belief that evidence of a crime may be found in a certain place" ' (*People v German*, 251 AD2d 900, 901, *lv denied* 92 NY2d 897, quoting *People v McCulloch*, 226 AD2d 848, 849, *lv denied* 88 NY2d 1070; *see, People v Edwards*, 69 NY2d 814, 816). 'In reviewing the validity of a search warrant to determine whether it was supported by probable cause . . . the critical facts and circumstances for the reviewing court are those which were made known to the issuing Magistrate at the time the warrant application was determined . . . ' (*People v Nieves*, 36 NY2d 396, 402 [citations omitted]; *see, Rossi v City of Amsterdam*, 274 AD2d 874, 876). Notably, 'the court's determination that probable cause existed must be afforded great deference.' (*People v German, supra* at 901; *see, People v Park*, 266 AD2d 913, 913)." (*People v Sall*, 295 AD2d 812, 813 [3d Dept 2002].)
>
> " 'T[he] Fourth Amendment's commands . . . are practical and not abstract . . . A[ffidavits] for search warrants . . . must be tested and interpreted . . . in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.' " (*People v Scavone*, 59 AD2d 62, 65 [3d Dept 1977], quoting *United States v Ventresca*, 380 US 102, 108 [1965].)
>
> "It was not necessary for the warrant application to demonstrate defendants' guilt, but merely probable cause to believe there were illegal drugs on the premises (*United States v Ventresca*, [380 US 102],

pp 107-108; CPL 690.10, 690.40, subd 2; see, Pitler, NY Crim Prac Under CPL 10.23 [statutory 'reasonable cause' equivalent to constitutional 'probable cause']). The application, read as a whole, more than satisfies this standard." (*People v Scavone*, 59 AD2d 62, 66 [1977].)

The warrant application firmly establishes drug sales at Vincent Dunham's residence, establishes a tie between Caitlin Schoonover and Vincent Dunham, establishes that she drives him around in her vehicle, establishes that she is in South Carolina to pick him up and return him and Corey McCray to Elmira and that they will have cocaine with them to sell to individuals in Elmira who are receiving their checks the first of the month. While counsel is critical of the lack of the word cocaine being restated numerous times by the CI, a common-sense reading of the application establishes the information just set forth by the court.

The *Aguilar-Spinelli* test was met, in that Investigator Schreiber established the reliability of the CI in past investigations and the basis of knowledge of the CI was set forth as having spoken with Caitlin Schoonover regarding her trip, as having been to Dino's residence and purchased drugs from him and having personally seen Caitlin Schoonover driving Dino around in her car. His information was further corroborated by surveillance by the police and controlled buys made by the police. (*People v Hanlon*, 36 NY2d 549 [1975].)

The premises here to be searched was an automobile. A person has a lesser expectation of privacy in an automobile operated on a public highway than they would in their residence (the premises involved in *Mothersell*). (*See New York v Class*, 475 US 106 [1986]; *People v Devone*, 15 NY3d 106 [2010].) Further, the danger that innocent people would be present in the auto is certainly less than was involved in the restaurant in *Nieves*. The auto involved here was a midsized four-door sedan. It was not capable of holding an extensive number of people. Even if full, a warrant covering the occupants would not in the court's opinion amount to a "dragnet" in any event.

In that regard, the court would point to section 220.25 of the Penal Law, wherein a controlled substance in an automobile is presumed to be knowingly possessed by each occupant of the automobile. If there is probable cause to believe that drugs will be present in the automobile, then all individuals in the auto would be subject to search pursuant to the statutory presump-

tion. The fact that the drugs were ultimately found on the persons of the two females does not alter this, as long as probable cause existed at the time the warrant was issued that drugs would be found in the vehicle. The court believes that the statutory presumption differentiates this case from the situation in *Mothersell*.

The number of persons involved in the potential search was small and three of them were known (Caitlin Schoonover, Vincent Dunham and Corey McCray). While there was a possibility that an innocent hitchhiker or other innocent individual would be found in the car, the probability was that all in the auto would know the circumstances of the travel—to obtain a supply of cocaine from South Carolina. In considering the behavior of the individuals, the court notes that weapons often accompany drugs and that elaborate efforts are often made to secrete the drugs.

In sum, the court finds that the two prongs of reliability and basis of knowledge were established in regard to the CI, that the warrant application provided probable cause to believe that narcotics would be found in Caitlin Schoonover's auto as it returned to the area, and that based upon the statutory automobile presumption of Penal Law § 220.25, all occupants of the auto were presumed to be in possession of the drugs. The court finds that under these circumstances and based upon the application of the automobile presumption, the matter is not subject to the application of the ruling in *People v Mothersell* (14 NY3d 358 [2010]).

The defendant's motion to suppress is thus denied.